UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| LAMAR ADVERTISING OF SOUTH DAKOTA, INC., a South Dakota corporation, and TLC PROPERTIES, INC., d/b/a Lamar TLC Properties, Inc., a Louisiana corporation, | ) ) ) ) ) ) ) | CIV. 11-5068-JLV

ORDER |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| CITY OF RAPID CITY, a South Dakota municipal corporation, | ) ) ) | |
| Defendant. | ) | |

Plaintiffs, Lamar Advertising of South Dakota, Inc. ("Lamar"), and TLC Properties, Inc., d/b/a Lamar TLC Properties, Inc. ("TLC") (collectively referred to as "plaintiffs") filed a complaint against defendant City of Rapid City ("City"). (Docket 1). The complaint asserts two citizen-initiated ordinances, The Citizens' Billboard Control Initiative and The Citizens' Reform Initiative for Billboard Sign Credits (collectively referred to as "Citizen Initiatives"), were passed into law and directly contradict the South Dakota Codified Laws, result in a taking of private property without just compensation, and violate plaintiffs' rights to freedom of speech and equal protection under the law provided in the United States and South Dakota Constitutions. Id. Plaintiffs also contend they are entitled to recover attorneys' fees and costs under 42 U.S.C. §§ 1983 and 1988. Id.

Pending before the court are cross motions for summary judgement filed by plaintiffs and defendant.  (Dockets 28 & 34).  Based on the court's analysis, plaintiffs' motion is granted in part, denied in part, and reserved in part, and defendant's motion is granted in part and denied in part.

## MATERIAL FACTS

Lamar is in the business of leasing sign spacing for outdoor advertising. (Docket 37 at ¶ 4).  TLC has an ownership interest in several parcels of real property which Lamar leases for its outdoor advertising signs.  Id. at ¶ 5; Docket 44 at ¶ 5.

In 2002, the City made several changes to its Sign Code contained in the Rapid City Municipal Code.  (Docket 29 at ¶ 5).  Included in these changes was the Off-Premises Sign Credit System ("Credit System").  Id.; see also Docket 41-1 at pp. 24-25.  The Credit System permitted owners of off-premises signs to receive "Off Premises Sign Credits" ("credits") for removing an off-premises sign within the City or reducing the size of an off-premises sign to comply with the newly-enacted restrictions.  (Docket 41-1 at p. 24).  Under the Credit System, an off-premises sign owner would receive 2 credits for removing a sign that did not conform to the Sign Code and 1 credit for removing a sign that did conform.  Id. at p. 25.

Under the Credit System, an owner of credits can transfer them or use the credits to construct new off-premises signs if the new sign otherwise complies with the requirements of the Rapid City Municipal Code and other federal, state, or local laws and regulations.  Id.

2

From July 2002 until June 2011, Lamar removed or reduced the size of 47 off-premises signs and the City provided Lamar with 94 total credits. (Docket 29 at ¶ 8).  Lamar redeemed 6 of its credits, leaving it with 88 credits as of June 2011.  Id. at ¶ 9.  Other companies operating within Rapid City collectively hold 16 credits under the Credit System.  Id.

In 2011, a group of citizens known as Scenic Rapid City proposed two citizen-initiated ordinances, The Citizens' Billboard Control Initiative and The Citizens' Reform Initiative for Billboard Sign Credits.  Id. ¶ 16.  The stated purpose of The Citizens' Billboard Control Initiative was to limit new construction of electronic or digital signs in Rapid City (the Sign Initiative). (Docket 37 at ¶ 10).  The stated purpose of The Citizens' Reform Initiative for Billboard Sign Credits was to limit the issuance of new sign credits (the Credit Initiative).  Id. at ¶ 13.  On June 7, 2011, a City election was held and the Citizen Initiatives were placed on the ballot.  Id.  Approximately 65 percent of the voting citizens favored the Citizen Initiatives.[1]  Id.

The Sign Initiative amended the Sign Code to prohibit all off-premises signs with internal illumination or which display electronic variable messages, also known as digital off-premises signs.  (Docket 29 at ¶ 17).  Specifically, § 15.28.050 (Prohibited Signs) of the Sign Code was amended by adding the following subdivision:

---

[1]At the June 7, 2011, election, 13,694 ballots were counted of which 8,874 were cast in favor of the initiatives.  (Docket 29 at ¶ 16).  In June 2011, there were 42,359 registered voters in Rapid City.  Id.

> R.   Off-premises signs with internal illumination or displaying electronic variable messages are prohibited. Any new off-premises sign is prohibited if it is internally illuminated or operates to display electronic variable messages through light emitting diodes or any other light emitting mechanism.   An existing off-premises sign may not be converted to a sign that is internally illuminated or operates to display electronic variable messages through light emitting diodes, liquid crystal display, plasma image display, or any other light emitting mechanism.

Id. at ¶ 18, see also Docket 41-1 at p. 9.  Section 15.28.160 (Off-Premises

Signs) of the Sign Code was amended by adding the following new subdivision:

> P.   No off-premises sign is permitted that is internally illuminated or operates to display electronic variable messages through light emitting diodes, liquid crystal display, plasma image display, or any other light emitting mechanism.

Id., Docket 41-1 at p. 17.  The ban on digital signs only applies to off-premises

signs.  (Docket 29 at ¶ 17; see generally Docket 41-1).  On-premises signs can

use digital sign technology.  (Docket 29 at ¶ 17).  Any existing digital off-

premises signs are not subject to removal under the new Sign Code but are

regarded by the City as legal, non-conforming signs.  Id.

     The Sign Initiative also amended the Sign Code to increase the distance

between off-premises signs.  Id. at ¶ 18.  Section 15.28.160 (Off-Premises

Signs) of the Sign Code was amended by changing the following language:

> D.  Off-premises signs shall be located not nearer than ~~500~~ 1,500 feet from any other off-premises sign.  The distance between off-premises signs shall be measured from the base of the sign in all directions (radial feet).  In addition, no off-premises sign shall be located nearer than ~~1,000~~ 2,000 feet from the nearest off premises signs as measured by the distance over a public road between

4

> a line that extends from the base of each sign to the
> nearest mid-point of any public road from which the sign
> is intended to be viewed.

Id., see also Docket 41-1 at p. 16.  This provision only applies to off-premises signs.  Id.  Any existing, non-complying signs are not subject to removal but are regarded by the City as legal, non-conforming signs.  (Docket 29 at ¶ 18).

The Credit Initiative amended the Sign Code by prohibiting the City from issuing any new off-premises sign credits if there are more than 20 sign credits outstanding.  Id. at ¶ 19, see also Docket 41-1 at p. 25.  Section 15.28.250(F) (Sunset date for sign credit) of the Credit Initiative amended the Sign Code to include a sunset provision on sign credits:

> F.  An off-premises sign credit shall not exist in
> perpetuity.  An off-premises sign credit shall terminate 2
> decades after it has been issued unless utilized within 20
> years from the date of issuance by the Building Official or
> unless the same has become void by operation of the
> provisions of this section.

(Docket 41-1 at p. 25).

Section 15.28.250(E) (Usage) of the Sign Code was amended as follows:

> E.  Off-premises sign credits may only be used to erect a
> new off-premises sign if the proposed new sign is in full
> compliance with all requirements of the Rapid City
> Municipal Code and all federal, state or local laws and
> regulations.  The city has no obligation to guarantee that
> a sign credit may be utilized within the city during the life
> of the credit.

Id.

Lamar alleges the new digital ban prevents it from fulfilling its comprehensive plan for the roll-out of additional digital off-premises signs in

the City.  (Docket 29 at ¶ 22).  TLC asserts the Citizen Initiatives prevent it from fulfilling its business plan to have the vinyl off-premises signs located on its properties converted to digital signs.  Id.  Lamar also contends the Sign Code's sunset provision prevents it from using its remaining 88 sign credits to grow its operation in the City by constructing new off-premises signs.  Id. at ¶ 23.  Lamar argues its long-term business plan depends on it being able to hold its signs credits until opportunities in desirable locations become available.  Id.  Lamar contends the sunset provision of the Sign Code makes it impossible for Lamar to use its sign credits before they expire, effectively rendering them worthless.  Id.

On August 26, 2011, Lamar and TLC commenced this action against the City, asserting the Citizen Initiatives directly contradict the South Dakota Codified Laws, result in a taking of private property without just compensation, and violate their rights to freedom of speech and equal protection under the law provided in the United States and South Dakota Constitutions.  (Docket 1).

On July 20, 2012, the City again amended the Sign Code.  (Docket 29 at ¶ 28).  The City retained all the regulations in the Citizen Initiatives.  Id.  However, § 15.29.050 of the Sign Code was amended to permit digital on-premises signs, including those with motion:

> On-premises electronic message centers, reader boards and other signs that allow for the display of varying messages through either manual means, or by the use of a digital, plasma, or LCD display, or other similar technology are allowed.  The maximum area of an on-premises sign authorized by this section is Sixty (60) square feet.  Notwithstanding any other provisions of this

6

> code, on-premises signs utilizing a digital display or other
> similar technology authorized by this section may
> incorporate graphic, animated or scrolling messages, but
> may not incorporate full motion video.

Id., see also Docket 41-19 at p. 3.

Lamar, TLC, and the City filed cross-motions for summary judgment. (Dockets 28 & 34).  Plaintiffs argue the Sign Code provisions enacted through the Citizen Initiatives (1) violate South Dakota state law and must be struck down; (2) result in the taking of property without just compensation; (3) violate the right to free speech; and (4) violate the right to equal protection.  (Docket 30).  The City contends preliminarily that the court lacks jurisdiction over counts I, III, VI, IX, and X of the complaint because plaintiffs failed to notify the South Dakota Attorney General as required by SDCL § 21-24-8.  (Docket 35).  The City also argues many of plaintiffs' claims are not ripe.  (Docket 35).  The City contends the Sign Code as amended by the Citizen Initiatives does not constitute a taking and does not violate plaintiffs' rights to equal protection and freedom of speech.  Id.

## DISCUSSION

### A.   Summary Judgment Standard

Under Fed. R. Civ. P. 56(a), a movant is entitled to summary judgment if the movant can "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Once the moving party meets its burden, the nonmoving party may not rest on the allegations or denials in the pleadings, but rather must produce affirmative evidence setting forth specific facts showing that a genuine issue of material fact exists.

7

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  Only disputes over facts that might affect the outcome of the case under the governing substantive law will preclude summary judgment.  Id. at 248.  Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  Id. at 247-48 (emphasis in original).

If a dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party, then summary judgment is not appropriate.  Id.  However, the moving party is entitled to judgment as a matter of law if the nonmoving party fails to "make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  In that event, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.

In determining whether summary judgment should issue, the facts and inferences from those facts must be viewed in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).  The key inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-

sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

**B.   Whether SDCL § 21-24-8 Deprives the Court of Jurisdiction over Counts I, III, VI, VII, IX, and X of Plaintiffs' Complaint.**

Counts I, III, VI, VII, IX, and X of plaintiffs' complaint are brought pursuant to SDCL § 21-24-1 et seq.  (Docket 1 at ¶¶ 49, 68, 95, 102, 114, and 121).  Each of these counts allege the Sign Code provisions enacted following the Citizen Initiatives are unconstitutional.  SDCL § 21-24-8 provides:

> In any proceeding which involves the validity of a municipal ordinance or franchise, such municipality shall be made a party and shall be entitled to be heard, and if the statute, ordinance, or franchise, is alleged to be unconstitutional, the attorney general of the state shall also be served with a copy of the proceeding and be entitled to be heard.

SDCL § 21-24-8.

As a preliminary jurisdictional matter, the City contends plaintiffs failed to serve a copy of the complaint on the South Dakota Attorney General and, as a result, the City asserts these claims should be dismissed as a matter of law. (Docket 35 at pp. 6-7).  The South Dakota Supreme Court has consistently held failing to comply with a statute which requires service upon the attorney general does not deprive the court of jurisdiction.  See Sioux Falls Argus Leader v. Young, 455 N.W.2d 864, 867 (S.D. 1990) ("this court recently held in Sharp v. Sharp, 422 N.W.2d 443 (S.D. 1988) that failure to comply with SDCL 15-6-24(c) is not a defect which denies this court of jurisdiction over a constitutional

challenge to a statute.") (citing State v. Dunning, 79 N.W. 846 (S.D. 1899)).
The jurisdictional issues in Young and Sharp related to SDCL 15-6-24(c).  That
statute requires the attorney general to be served and given an opportunity to
intervene when a constitutional challenge is made to an act of the Legislature.
This case deals with SDCL § 21-24-8, a constitutional challenge to a municipal
ordinance.  Both statutes require a party to serve the attorney general when a
constitutional challenge is raised to either a legislative act or municipal
ordinance.  Failing to comply with SDCL § 21-24-8 does not deprive this court
of jurisdiction over the constitutional challenges raised by plaintiffs.

Furthermore, plaintiffs, upon recognizing the issue, served a copy of the
complaint and summary judgment papers on the South Dakota Attorney
General.  (Docket 53-6).  Shortly thereafter, the Attorney General sent a letter
to plaintiffs' counsel indicating the State would not intervene or otherwise
request leave to participate in the proceeding.  (Docket 53-7).

C.    Ripeness

The City contends counts I, II, III, IV, V, and IX of the plaintiffs'
complaint are not ripe.  (Docket 35 at pp. 7-12).  The City argues plaintiffs are
asking this court to speculate regarding the future effect of the changes to the
Sign Code.  Id. at p. 7.  As a result, the City claims plaintiffs cannot meet the
requirements of "ripeness" under SDCL § 21-24-1 or Article III of the United
States Constitution.  Id.  Plaintiffs respond that the City mischaracterizes the

grounds for their takings claims and assert their takings claims are ripe for review.

"The ripeness doctrine flows both from the Article III 'cases' and 'controversies' limitations and also from prudential considerations for refusing to exercise jurisdiction." Nebraska Pub. Power Dist. v. MidAmerica Energy Co., 234 F.3d 1032, 1037 (8th Cir. 2000) (citations omitted).  Its " 'basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.' " Id. (quoting Abbott Labs v. Gardner, 387 U.S. 136, 148 (1967)).  "It requires that before a federal court may address itself to a question, there must exist 'a real, substantial controversy between parties having adverse legal interest, a dispute definite and concrete,' not hypothetical or abstract.' " Id. at 1037-38 (quoting Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979)).  "Parties may not simply submit questions of general interest or curiosity to the federal courts." Id. at 1038.

"The difference between an abstract question and a 'case or controversy' is one of degree, of course, and is not discernible by any precise test." Babbitt, 442 U.S. at 297.  "[T]he ripeness inquiry requires examination of both the 'fitness of the issues for judicial decision' and 'the hardship to the parties of withholding court consideration.' " Nebraska Pub. Power Dist., 234 F.3d at 1038 (quoting Abbott Labs, 387 U.S. at 149).

11

"The 'fitness for judicial decision' inquiry goes to a court's ability to visit an issue" and "safeguards against judicial review of hypothetical or speculative disagreements." Id. "While courts shy from settling disputes contingent in part on future possibilities, certain cases may warrant review based on their particular disposition." Id. (citing Shalala v. Illinois Council on Long Term Care, Inc., 529 U.S. 1 (2000)). "Exceptions may be had where an issue is largely legal in nature, may be resolved without further factual development, or where judicial resolution will largely settle the parties' dispute." Id. (internal citations omitted).

An issue between the parties must also "be such that delayed review will result in significant harm." Id. " 'Harm' includes both the traditional concept of actual damages—pecuniary or otherwise—and also the heightened uncertainty and resulting behavior modification that may result from delayed resolution." Id. (citing Ohio Forestry Ass'n, Inc. v. Sierra Club, 523 U.S. 726, 733-34 (1998). "A plaintiff does not have to 'await consummation of threatened injury' before bringing a declaratory judgment action." South Dakota Mining Ass'n, Inc. v. Lawrence County, 155 F.3d 1005, 1008 (8th Cir. 1998) (quoting Babbitt, 442 U.S. at 289).

The United States Court of Appeal for the Eighth Circuit held "[a] party seeking judicial relief must necessarily satisfy both prongs to at least a minimal degree." Nebraska Pub. Power Dist., 234 F.3d at 1039. "Judicial resolution of

a legal question fit for judicial review yet portending no immediate hardship would constitute little more than a law review article.  Conversely, to resolve an issue lacking factual development simply to avoid a threatened harm would be to favor expedition over just resolution." Id.

It is not always necessary that a statute be applied before permitting a challenge to go forward.  See Pacific Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n, 461 U.S. 190, 200-02 (1983) (finding the question presented to be purely legal, the nature of the challenge required no further factual development, and the resulting uncertainty placed millions of dollars in investment at risk).

The dispute in this case is largely legal in nature and involves the interpretation of various provisions of the Sign Code.  The factual record is sufficiently developed to resolve the majority of the issues before the court.  Lamar and TLC set forth in their briefing the potential loss to property, which if accurate, is significant.  In this case, if the court withholds its decision, plaintiffs inevitably would return here shortly, making very similar if not precisely the same claims.  Furthermore, as explained below, it is unnecessary for the court to reach plaintiffs' claims related to whether the Sign Code constitutes a taking.

13

**D.      Whether the Sign Code Provisions Enacted following the Citizen Initiatives Violate South Dakota Law.**

Under South Dakota law, a municipality may not pass an ordinance when (1) the ordinance is duplicative of state law; (2) the ordinance conflicts with state law; or (3) where state law occupies a particular field to the exclusion of all local regulations.  Rantapaa v. Black Hills Chair Lift Co., 633 N.W.2d 196, 204 (S.D. 2001).  "A local governmental ordinance conflicts with state law when its provisions, express or implied, are inconsistent and irreconcilable with state law."  Id. (citations omitted); see also Snow Land, Inc. v. City of Brookings, 282 N.W.2d 607, 608 (S.D. 1979) ("A conflict arises between an ordinance and a statute only where their express or implied terms are irreconcilable, where the ordinance permits that which the statute forbids, or where the ordinance forbids that which the statute expressly permits.") (citation omitted)).

In determining whether a conflict exists, the court must examine the relevant statutes.  Faircloth v. Raven Indus., Inc., 620 N.W.2d 198, 200 (S.D. 2000).  Courts "read statutes as a whole along with the enactments relating to the same subject."  Id. at 201 (citations omitted).  "[T]he purpose of statutory interpretation is to fulfill the legislative dictate.  Intent is ordinarily ascertained by examining the express language of the statute."  Id. (citations omitted).  Courts "defer to the text where possible."  Id.  The court is to "assume that the Legislature intended that no part of its statutory scheme be rendered mere surplusage."  Id.  "Words and phrases in a statute must be given their plain

14

meaning and effect.  When the language in a statute is clear, certain, and unambiguous, there is no reason for construction, and [this] Court's only function is to declare the meaning of the statute as clearly expressed." <u>Moss v. Guttormson</u>, 551 N.W.2d 14, 17 (S.D. 1996).

Plaintiffs contend the ban on off-premises digital signs, the spacing requirements for off-premises signs, and the sunset provision on sign credits contained within the Sign Code expressly conflict with the South Dakota Codified Laws and should be struck down.  (Docket 30 at pp. 6-12).  The court will discuss each argument in turn.

### 1.   Off-premises digital signs

Section 15.28.050 (Prohibited Signs) of the Sign Code was amended by adding the following subdivision:

> R.   Off-premises signs with internal illumination or displaying electronic variable messages are prohibited. Any new off-premises sign is prohibited if it is internally illuminated or operates to display electronic variable messages through light emitting diodes or any other light emitting mechanism.  An existing off-premises sign may not be converted to a sign that is internally illuminated or operates to display electronic variable messages through light emitting diodes, liquid crystal display, plasma image display, or any other light emitting mechanism.

(Docket 41-12 at p. 1).  Section 15.28.160 (Off-Premises Signs) of the Sign Code was amended by adding the following subdivision:

> P.  No off-premises sign is permitted that is internally illuminated or operates to display electronic variable messages through light emitting diodes, liquid crystal

15

> display, plasma image display, or any other light emitting
> mechanism.

Id. Plaintiffs claim these provisions expressly prohibit all off-premises signs that are internally illuminated or operate to display electronic variable messages, also known as digital billboards.[2] (Docket 30 at p. 8). The City admitted this fact. (Docket 52 at ¶ 17).

South Dakota's Highway Beautification and Regulation of Advertising statutes regulate outdoor advertising. "Outdoor advertising" is defined as:

> any outdoor sign, display, device, light, figure, drawing,
> painting, message, plaque, poster, or billboard, which is
> designed, intended or used to advertise or inform, any
> part of the advertising or information contents of which
> is visible from any place on the main-traveled way of the
> interstate or primary systems.

SDCL § 31-29-62(12).

SDCL § 31-29-66 governs the lighting standards and criteria for outdoor advertising:

> The standards and criteria for lighting of outdoor
> advertising authorized to be erected and maintained in
> zoned or unzoned commercial or industrial areas
> adjacent to the interstate and primary highway systems
> are:
> . . .
>
> > (4) A changeable message sign is permitted as an
> > off-premises sign, regardless of the technology
> > used, if the message is changed not more than

---

[2]These provisions only apply prospectively. Any existing digital off-premises signs are not subject to removal under these provisions but are regarded as legal, non-conforming uses. (Dockets 29 at ¶ 17 & 30 at ¶ 17).

> once every six seconds and if the message is not
> continuously scrolled.

SDCL § 31-29-66.

SDCL § 31-29-69 states:

> Nothing in §§ 31-29-61 to 31-29-83, inclusive, authorizes
> any local authority to prohibit outdoor advertising
> throughout its jurisdiction.    However, any such
> regulation and control shall be reasonable and
> reasonably related to the needs of the business
> community to adequately and properly advertise its goods
> and services of benefit to the traveling public.

SDCL § 31-29-69.

Plaintiffs contend SDCL §§ 31-29-66 and 31-29-69 specifically permit

digital off-premises signs and the portions of the Citizen Initiatives which ban

digital off-premises signs conflict with these statutes and are therefore invalid

and unenforceable.  (Docket 30 at pp. 7-9).

The City argues there is nothing in SDCL §§ 31-29-66 and 31-29-69

which specifically mentions digital off-premises signs or banning digital off-

premises signs and that SDCL § 31-29-69 expressly permits reasonable

regulation and control.  (Docket 48 at pp. 3-4).  The City asserts "SDCL

§ 31-29-69 forbids *only* what its title purports to forbid: 'Blanket *prohibition* by

local authority not authorized – *Reasonableness required.*' " Id. at p. 4

(emphasis in original) (citing SDCL § 31-29-69).

Reading SDCL §§ 31-29-66 and 31-29-69 together, it is clear that a city

cannot prohibit all outdoor advertising.  However, a city is permitted to regulate

17

outdoor advertising, including billboards, as long as the regulations and control are reasonable and do not conflict with another statute.  In this case, the City chose, through the Citizen Initiatives, to regulate off-premises billboards.  Under SDCL § 31-26-69, any regulation and control of off-premises billboards must be reasonable.  Here however, the 2011 Sign Code amendments completely ban the use of digital off-premises billboards after the effective date of the amendments.  (Docket 41-1 at pp. 9 & 17).

A complete ban on the use of digital off-premises billboards directly conflicts with SDCL § 31-29-66.  The lighting standards and criteria established by South Dakota law for off-premises signs, including billboards, permits "A changeable message sign . . . regardless of the technology used, if the message is changed not more than once every six seconds and if the message is not continuously scrolled."  SDCL § 31-29-66(4).  The City argues the plain language here does not mention digital billboards and therefore a ban on digital off-premises signs is a reasonable regulation.  (Docket 48 at pp. 3-4).

"Where two statutes appear to conflict, it is [the court's] duty to reasonably interpret both, giving 'effect, if possible, to all provisions under consideration, construing them together to make them harmonious and workable.'" Faircloth, 620 N.W.2d at 201 (citing Meyerink v. Nw. Pub. Serv., 391 N.W.2d 180, 184 (S.D. 1986)).

18

In this case, the Sign Code provisions banning digital off-premises billboards and the South Dakota law permitting the use of off-premises changeable message signs, regardless of the technology, cannot be harmonized. Section 15.28.050(R) of the Sign Code clearly prohibits all "off-premises signs with internal illumination or displaying electronic variable messages." (Docket 41-1 at p. 9). The Sign Code's complete ban on digital off-premises signs cannot be squared with SDCL § 31-29-66, which expressly permits off-premises "changeable message sign[s] . . . regardless of the technology used, if the message is changed not more than once every six seconds and if the message is not continuously scrolled."  SDCL § 31-29-66(4).  Although the phrase "changeable message sign" is not defined in the statute, a digital billboard is a changeable message sign.  See Lamar Tennesee, LLC v. Murfreesboro Bd. of Zoning Appeals, 336 S.W.3d 226, 230 n. 8 (Tenn. App. 2010) (" 'Digital display' means a type of changeable message sign that displays a series of messages at intervals through the electronic coding of lights or light emitting diodes or any other means that does not use or require mechanical rotating panels."); Scenic Arizona v. City of Pheonix Bd. of Adjustment, 268 P.3d 370, 421 (Ariz. 2011) (defining "electronic message board" as a "type of outdoor advertising [ ] also referred to as an 'off-premises changeable electronic variable message sign' or a 'digital changing video display.' ").

19

Even if this court found the term "changeable message sign" to mean something in addition to digital signs, SDCL § 31-29-66 expressly permits the changeable message sign "regardless of the technology used."  Interpreting SDCL §§ 31-29-66 and 31-29-69 as the City urges would require this court to ignore portions of the statutory scheme, which this court is not free to do. Faircloth. 620 N.W.2d at 201 (the court is to "assume that the Legislature intended that no part of its statutory scheme be rendered mere surplusage"). Sections 15.28.050(R) and 15.28.160(P) of the Sign Code expressly conflict with SDCL § 31-29-66 and are therefore invalid as a matter of law.  Rantapaa, 633 N.W.2d at 196.  Plaintiffs' motion for summary judgment on this issue is granted.

### 2. Spacing requirements for off-premises signs

The Citizen Initiatives amended § 15.28.160(D) (Off-Premises Signs) of the Sign Code by changing the following language:

> D.  Off-premises signs shall be located not nearer than 500 1,500 feet from any other off-premises sign.  The distance between off-premises signs shall be measured from the base of the sign in all directions (radial feet).  In addition, no off-premises sign shall be located nearer than 1,000 2,000 feet from the nearest off premises signs as measured by the distance over a public road between a line that extends from the base of each sign to the nearest mid-point of any public road from which the sign is intended to be viewed.

(Dockets 29 at ¶ 18; 41-1 at p. 16).

20

Plaintiffs argue "[t]he new spacing requirements between off-premises signs is the functional equivalent of a complete ban on new off-premises signs in the City because it creates such a distance between signs that there are no potential locations on which to construct off-premises signs." (Docket 30 at p. 9). Although plaintiffs make this assertion, they provide no facts or evidence to support the conclusion except the affidavit of Doug Rumpca.[3] Conclusions of law in an affidavit are not evidence. See Allen v. Entergy Corp., 181 F.3d 902, 906 (8th Cir. 1999) (explaining that conclusory affidavits devoid of specific factual allegations rebutting the moving party's evidence cannot defeat a summary judgment motion); Stine v. State Farm Fire & Cas. Co., 428 F. App'x 549, 550 (6th Cir. 2011) (A "conclusory affidavit bypasses the specific-fact requirements of Federal Rule of Civil Procedure 56 necessary to forestalling summary judgment."). Based on plaintiffs' bare conclusion of law, they assert the spacing requirements conflict with SDCL § 31-29-69 which expressly prohibits a municipality from banning outdoor advertising.

SDCL § 31-29-69 allows a municipality to regulate outdoor advertising as long as the regulation and control are reasonable. The City asserts, and

---

[3]Doug Rumpca, General Manager of Lamar Advertising of South Dakota, Inc., submitted an affidavit in which he stated, "The new spacing requirements between off-premises signs effectively prohibit any new off-premises signs from being constructed in the City because it creates such a distance between signs that there are no potential locations on which to construct an off-premises sign." (Docket 42 at ¶ 19).

plaintiffs agree, it has authority under SDCL § 31-29-67 to regulate spacing standards and criteria.  (Dockets 35 at p. 13 & 45 at p. 38).  The City, relying on Outdoor Graphics, Inc. v. City of Burlington, Iowa, 103 F.3d 690 (8th Cir. 1996), argues that because "[a] city may justifiably prohibit all off-premises billboards for aesthetic or safety reasons, subject to First Amendment guidelines," then "it is axiomatic that cities may limit the spacing and size requirements for off-premises signs."  (Docket 35 at pp. 19-20) (quoting Outdoor Graphics, 103 F.3d at 695).

Despite the holding in Outdoor Graphics, the City's position on this point is tenuous.  South Dakota law expressly prohibits the City from banning outdoor advertising.  See SDCL § 31-29-69.  Any regulation or control of outdoor advertising must be reasonable.  Id.  Whether the increased spacing requirements are reasonable is a material fact to be decided at trial.[4]  The plaintiffs' and defendant's motions for summary judgment are denied on this point.

### 3.    20-year sunset provision on sign credits

Lamar argues repeatedly throughout its written submissions that the 20-year sunset provision of the Sign Code constitutes a taking of their existing 88 sign credits because it is impossible to use all the sign credits before they

---

[4]The parties' Form 52 Report indicates that neither party requested a jury trial.  (Docket 13 at p. 5).  As a result, the issues of fact related to the spacing requirements will be resolved through a court trial.

22

expire.  Section 15.28.250(F) (Sunset date for sign credit) amended the Sign

Code by adding the following language:

> F. An off-premises sign credit shall not exist in
> perpetuity.  An off-premises sign credit shall terminate 2
> decades after it has been issued unless utilized within 20
> years from the date of issuance by the Building Official or
> unless the same has become void by operation of the
> provisions of this section.

(Docket 41-1 at p. 25).  Lamar asserts this provision applies retroactively and

directly impacts their sign credits.

Lamar contends this provision, applied retroactively, is a violation of

SDCL § 31-29-75, which states:

> No outdoor advertising sign, display, or device may be
> removed by an amortization schedule, nor may its value
> be so determined, and the owners thereof and the owners
> of the real property on which the same are situated shall
> be guaranteed just compensation, including through
> condemnation procedures, as provided in §§ 31-29-61 to
> 31-29-83, inclusive.

Lamar argues the sunset provision is equivalent to an amortization schedule

and contends the City is prohibited by statute from removing outdoor

advertising signs in this manner.

As evidence of its retroactivity, Lamar points to the City's answer to an

interrogatory where the City answered "yes" when asked whether the City

intended to enforce the sunset provision to existing off-premises sign credits.

(Docket 41-3 at p. 8).  The City responds by saying this answer was given

"under objection[] and outside of the proper forum."  (Docket 55 at p. 2).

23

Counsel for the City, throughout its briefs, asserts the sunset provision does not apply retroactively.  (Dockets 48 at p. 6 & 55 at pp. 2-3).

It is a "fundamental rule of statutory construction that statutes are to be construed as having only a prospective operation unless the purpose and intention of the legislature to give them retrospective effect clearly appears."  In re Scott's Estate, 133 N.W.2d 1, 3 (S.D. 1965); see also Gasper v. Freidel, 450 N.W.2d 226, 233 (S.D. 1990) ("statutes are presumed to have prospective application and may be construed as retroactive only when such intention plainly appears.").

In this case, the sunset provision of the Sign Code contains no language signifying retroactivity.  The provision does not mention a specific date the provision should be applied nor does it include any form of the word "retroactive."   There is no language in § 15.28.250(F) to get the sunset provision past the fundamental rule regarding prospective operation.  In re Scott's Estate, 133 N.W.2d at 3.  Regardless of the City's answer to the interrogatory, the plain language of the sunset provision applies only prospectively.  Lamar's multitude of arguments and takings theories regarding the sunset provision of the Sign Code are rejected.  Defendant's motion for summary judgment is granted on this point.

24

**E.      Whether the Sign Code, as Amended by the Citizen Initiatives, Violates the Right to Free Speech.**

Plaintiffs argue the Sign Code violates the South Dakota and United States Constitutions.  (Docket 30 at pp. 40-56).  Plaintiffs assert the "Sign Code separates signs into categories for regulation depending on whether they are 'on-premises,' 'off-premises,' or 'for a public purpose' "[5] and restricts speech based on its content.  Id. at p. 40.  Plaintiffs contend the following:

> To determine whether a particular sign is regulated as an "on-premises sign" or as an "off-premises sign," one must consult the contents of the sign: If the contents relate to activities conducted on the premises, the sign is permissible without regard to whether it is 1,500 feet from another sign and without regard to whether it uses a digital display.  If, on the other hand, the contents relate to activities that are not conducted on the premises, the sign is impermissible if it is located within 1,500 feet from an off-premises sign or if it uses digital display.

Id. at p. 41.

An "on-premises" sign is defined under the Sign Code as "Any sign identifying or advertising a business, person, activity, goods, products or services which are located on the premises where the sign is installed and maintained."  (Docket 41-1 at p. 4).  An "off-premises" sign is defined as "Any sign identifying or advertising a business, person, activity, goods, products or

---

[5]The "public purpose" exception was repealed in 2012.  (Docket 30 at p. 41, n. 8).

services located off the premises from where the business, person/activity, goods, products, or services are located." Id.

It is not necessary to engage in a lengthy discussion regarding free speech rights under the South Dakota and United States Constitutions because the Sign Code does not regulate speech based on content nor does it distinguish the types of permitted messages between on-premises and off-premises signs as plaintiffs suggest.

Section 15.28.290 of the Sign Code expressly permits any off-premises sign or any other sign to contain commercial or non-commercial speech. Section 15.28.290 (Substitution of noncommercial speech for commercial speech) states:

> *Notwithstanding any other provision of this chapter to the contrary*, any lawfully erected off-premises sign *or other sign* displaying a commercial message may, at the option of the owner, display a noncommercial message. The noncommercial message may occupy the entire sign face or any portion thereof. The sign face may be changed from commercial to noncommercial messages, or from one noncommercial message to another, as frequently as desired by the owner of the sign, in compliance with the rest of this chapter, provided that the sign is not a prohibited sign or sign-type and provided the size, height, setback, dimensional and other criteria contained in this chapter are satisfied.

(Docket 41-1 at p. 29) (emphasis added).

Plaintiffs argue § 15.28.290 "does not protect non-commercial speech to the same extent that on-premises signs are protected by the Sign Code"

because the Sign Code "does not clearly permit on-premises signs to be used to display non-commercial messages, because it references only 'off-premises or other sign,' without referencing on-premises signs" and because the "Sign Code imposes conditions on the conversion of signs." (Docket 45 at p. 55).

Despite plaintiffs' arguments to the contrary, the language of § 15.28.290 is clear. All signs, whether off-premises or otherwise, may display a commercial or non-commercial message. The term "other sign" necessarily includes on-premises signs. See Moss, 551 N.W.2d at 17 ("Words and phrases in a statute must be given their plain meaning and effect."). This provision, by its plain language, overrides any contrary provisions within the Sign Code. Plaintiffs' motion for summary judgment is denied as it relates to any restriction of speech based on its content. Defendant's motion for summary judgement is granted on this point.

**F.   Whether the Sign Code, as Amended by the Citizen Initiatives, Violates the Right to Equal Protection.**

Plaintiffs claim "the Sign Code, as amended by the Citizen Initiatives, discriminate[s] between two classes of outdoor advertisers without any support in the purpose of the Sign Code" in violation of the South Dakota and United States Constitutions. (Docket 30 at pp. 56-65).

Plaintiffs set forth two primary arguments. First, plaintiffs claim the Sign Code creates an arbitrary classification between digital advertising

27

by on-premises advertisers and digital advertising by off-premises advertisers.
Id. This argument is moot. As set forth above, the provisions of the Sign Code
which ban digital off-premises signs conflict with SDCL §§ 39-29-66 and 39-
29-69 and are invalid as a matter of law.

Second, plaintiffs contend the Sign Code creates an arbitrary
classification between Lamar and other off-premises outdoor advertising
companies. Id. Lamar's second argument relates to the Sign Code's off-
premises sign credit system.

Section 15.28.250(B)(6) of the Sign Code states, "An off-premises sign
credit may not be issued if there are more than 20 sign credits outstanding."
(Docket 41-1 at p. 25). Section 15.28.250(F) (Sunset date for sign credit) of the
Sign Code provides:

> F. An off-premises sign credit shall not exist in
> perpetuity. An off-premises sign credit shall terminate 2
> decades after it has been issued unless utilized within 20
> years from the date of issuance by the Building Official or
> unless the same has become void by operation of the
> provisions of this section.

Id. Lamar contends these provisions create an arbitrary classification because
Lamar is the only entity with more than 20 credits and is thereby the only
entity the City is depriving of additional sign credits. (Docket 30 at p. 61).
Lamar also argues the sunset provision deprives only Lamar of its 88 sign
credits because other off-premises advertising companies have at most 6 sign
credits and are therefore able to utilize their sign credits before they expire. Id.

28

Plaintiffs' argument regarding the retroactivity of the Sign Code's sunset provision is moot.  As set forth above, § 15.28.250(F) applies prospectively, not retroactively.  Any contention the Sign Code creates an impermissible classification based on the use or ability to use existing sign credits is without merit.

Plaintiffs' final position related to equal protection has to do with § 15.28.250(B)(6) of the Sign Code which governs the number of sign credits that may be issued.  Lamar claims this provision creates an arbitrary classification between Lamar and other off-premises outdoor advertisers because Lamar is the only entity with more than 20 sign credits and therefore § 15.28.250(B)(6) only prohibits the City from issuing sign credits to Lamar. The City contends Lamar is misinterpreting § 15.28.250(B)(6) of the Sign Code related to the issuance of sign credits.  (Docket 52 at ¶ 19).  The City asserts under § 15.28.250(B) the City will not issue any additional credits to any entity until the total number of outstanding sign credits amongst all entities is less than 20.  Id.  This argument goes to an interpretation of the ordinance.

In determining whether the § 15.28.250(B)(6) of the Sign Code violates "Article VI, § 18 of the South Dakota Constitution and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution," the South Dakota Supreme Court "utilize[s] a two-part test which has traditionally been used by courts when a statute is called into question because of an

29

alleged denial of equal protection." <u>City of Aberdeen v. Meidinger</u>, 233 N.W.2d

331, 333 (S.D. 1975).

> The first part of the test is whether the statute does set
> up arbitrary classification among various persons subject
> to it.  The second part of the test is whether there is a
> rational relationship between the classification and some
> legislative purpose.

<u>Id.</u>  Under the first prong, the court must look to see whether the sign credit

limit applies equally to all people.  <u>See</u> <u>State v. Krahwinkel</u>, 656 N.W.2d 451,

460 (S.D. 2002).  This determination requires the court to interpret the

language of the ordinance.  "[T]he purpose of statutory interpretation is to fulfill

the legislative dictate.  Intent is ordinarily ascertained by examining the

express language of the statute." <u>Faircloth</u>, 620 N.W.2d at 201 (citations

omitted).  Courts "defer to the text where possible." <u>Id.</u> "Words and phrases in

a statute must be given their plain meaning and effect.  When the language in

a statute is clear, certain, and unambiguous, there is no reason for

construction, and [this] Court's only function is to declare the meaning of the

statute as clearly expressed." <u>Moss</u>, 51 N.W.2d at 17.

Section 15.28.250(B)(6) of the Sign Code states, "An off-premises sign

credit may not be issued if there are more than 20 sign credits outstanding."

(Docket 41-1 at p. 25).  Lamar bases its equal protection argument on an

incorrect interpretation § 15.28.250(B)(6).  This provision does not include a

"per-entity" cap on sign credits.  Rather, under a plain meaning interpretation,

the City is prohibited from issuing an off-premises sign credit to any entity if the total number of outstanding credits is greater than 20.  The provision applies to all entities, regardless of the number of outstanding sign credits any single entity may or may not have.  The Sign Code does not create an arbitrary classification between outdoor advertisers holding 20 or more credits and outdoor advertisers holding less than 20 sign credits.  All off-premises advertisers are treated the same and there is no classification between Lamar and other outdoor advertisers.  As a result, the first prong of the test is not satisfied.  Plaintiffs' motion for summary judgment on this point is denied.  The City's motion for summary judgment on this point is granted.

**G.    Attorneys' Fees.**

Lamar and TLC request the court award attorneys' fees and costs under 42 U.S.C. § 1983 and 1988.  (Docket 30 at pp. 65-69).  The court reserves ruling on plaintiffs' motion for attorneys' fees and costs.

**H.    Remaining Issues.**

Based on the analysis above, the only remaining issues are whether the spacing requirements established by the Citizen Initiatives are reasonable and whether plaintiffs are entitled to damages.  The parties' Form 52 Report indicates that neither party requested a jury trial.  (Docket 13 at p. 5).  As a result, these issues will be resolved through a court trial.

31

## CONCLUSION

Based on the analysis above, the court finds SDCL § 21-24-8 does not deprive the court of jurisdiction over counts I, III, VI, VII, IX, and X of plaintiffs' complaint.  The court finds §§ 15.28.050(R) and 15.28.160(P) of the Sign Code expressly conflict with SDCL §§ 31-29-66 and 31-29-69 and are therefore invalid as a matter of law.  The court finds an issue of material fact exists regarding whether the amended spacing requirements for off-premises signs contained in § 15.28.160(D) of the Sign Code are reasonable.  The court finds the 20-year sunset provision contained in § 15.28.250(F) of the Sign Code applies only prospectively.  Finally, the court finds the Sign Code does not restrict speech based on content nor does it create an arbitrary classification between Lamar and other outdoor advertisers.  Accordingly, it is hereby

ORDERED that plaintiffs' motion for summary judgment (Docket 28) is granted in part, denied in part, and reserved in part as set forth above.

IT IS FURTHER ORDERED that defendant's motion for summary judgment (Docket 34) is granted in part and denied in part as set forth above.

Dated February 21, 2014.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
CHIEF JUDGE

32