UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| LAMAR ADVERTISING OF SOUTH DAKOTA, INC., a South Dakota corporation, and TLC PROPERTIES, INC., d/b/a Lamar TLC Properties, Inc., a Louisiana corporation,<br><br>        Plaintiffs,<br><br>  vs.<br><br>CITY OF RAPID CITY, a South Dakota municipal corporation,<br><br>        Defendant. | CIV. 11-5068-JLV<br><br><br>ORDER |

## PROCEDURAL HISTORY

Plaintiffs, Lamar Advertising of South Dakota, Inc. ("Lamar"), and TLC Properties, Inc., d/b/a Lamar TLC Properties, Inc. ("TLC"), collectively referenced as ("plaintiffs"), filed a complaint against defendant City of Rapid City ("City"). (Docket 1). The complaint asserts two citizen-initiated ordinances, The Citizens' Billboard Control Initiative and The Citizens' Reform Initiative for Billboard Sign Credits (collectively referred to as "Citizen Initiatives"), were passed into law and directly contradict South Dakota Codified Law provisions, resulting in a taking of private property without just compensation. Plaintiffs also claim the ordinances violate freedom of speech and equal protection as rights secured by the United States and South Dakota Constitutions. Id. Plaintiffs contend they are entitled to recover money damages as well as attorney's fees and costs under 42 U.S.C. §§ 1983 and 1988. Id.

The parties filed cross motions for summary judgment.   (Dockets 28 & 34).   The court granted in part, denied in part and reserved in part plaintiffs' motion.   (Docket 65 at p. 32).   The court also reserved ruling on plaintiffs' motion for attorney's fees and costs.   Id. at 31.   The court granted in part and denied in part defendant's motion.   Id. at 32.   Following the summary judgment order, the court indicated "the only remaining issues are whether the spacing requirements established by the Citizen Initiatives are reasonable and whether plaintiffs are entitled to damages."   Id. at 31.   Because neither party requested a jury trial, a court trial was scheduled.   Id.; see also Dockets 68 & 69.

The court made several rulings prior to trial.   (Dockets 109 & 114).   The court trial commenced on November 10, 2014, and concluded on November 14, 2014.   (Docket 115).   The court ordered simultaneous briefing, and the parties submitted post-trial briefs.   (Dockets 118 & 119).   In addition to the express issues left for the court trial (Docket 65 at p. 31), both parties made additional motions at the pretrial conference, immediately before trial, during trial and in post-trial briefing, including: (1) plaintiffs' motion to amend its complaint (Docket 118 at p. 37); (2) the City's renewed motion for summary judgment (made orally); (3) the City's "motion to reconsider declaratory ruling on digital signs" (Docket 119 at p. 35); and (4) the City's motion for a directed verdict (made orally).

2

**FACTS**

The court incorporates the material facts from its summary judgment order by reference.   (Docket 65).   Plaintiffs called Doug Rumpca, the general manager of Lamar and a vice president of TLC; Andy Chlebek, a Rapid City code enforcement officer specializing in off-premise sign licensing; and Paul Wright, Jr., an expert witness and commercial real estate appraiser who consulted with the plaintiffs in calculating the extent of their alleged damages.   The City cross-examined all of plaintiffs' witnesses.   After the completion of plaintiffs' evidence, the City moved for a directed verdict.   The court took the motion under advisement.   The City called David Gilley, an expert witness on billboard and outdoor advertising issues, to critique Lamar's digital rollout plan.   Plaintiffs cross-examined Mr. Gilley.   The City rested, and the court adjourned the trial pending receipt of the parties' post-trial briefs.   Because of the wide array of pending motions and issues before the court, further recitation of salient facts is included in the appropriate discussion section below.

**DISCUSSION**

The court first addresses plaintiffs' motion to amend the complaint. Second, the court considers whether plaintiffs' regulatory takings claims are ripe.   Third, the court considers whether it has supplemental jurisdiction over plaintiffs' state law claims.

1.      **Plaintiffs' Motion to Amend the Complaint**

Plaintiffs' motion to amend the complaint is denied.   Plaintiffs' motion to amend the complaint is in response to the court's pretrial ruling granting the City's second motion *in limine*.   (Dockets 86 & 114).   In its motion *in limine*, the City sought "to exclude any evidence, testimony or argument of Plaintiffs regarding damages incurred by the denial of six billboard applications made two months prior to the vote on the initiated ordinance at issue in this case." (Docket 86 at p. 1).   The court granted the City's motion and found "plaintiffs failed to plead a plausible claim for entitlement to damages due to the six denied billboard applications."   (Docket 114 at pp. 1-2).   Plaintiffs orally moved to amend their complaint pursuant to Fed. R. Civ. P. 15(a) and (b) immediately prior to the start of trial.   The court took the motion under advisement.   In post-trial briefing, plaintiffs again sought to amend the complaint (Docket 118 at p. 1) and submitted an amended complaint with the alterations underlined.   (Docket 118-2).   Fed. R. Civ. P. 15(a)

Plaintiffs ask the court to grant their motion to amend based solely on Fed. R. Civ. P. 15.   However, "[a] schedule may be modified only for good cause and with the judge's consent."   Fed. R. Civ. P. 16(b)(4).   "When the district court has filed a Rule 16 pretrial scheduling order, it may properly require that good cause be shown for leave to file an amended pleading that is substantially out of time under that order."   In re Milk Products Antitrust Litig., 195 F.3d 430, 437 (8th Cir. 1999) (citing Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607-08

(9th Cir. 1992)); see also Popoalii v. Corr. Med. Servs., 512 F.3d 488, 497 (8th Cir. 2008) ("If a party files for leave to amend outside of the court's scheduling order, the party must show cause to modify the schedule.") (citing Fed. R. Civ. P. 16(b)).   "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements."   Bradford v. Dana Corp., 249 F.3d 807, 809 (8th Cir. 2001).

"If [the court] considered only Rule 15(a) without regard to Rule 16(b), we would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure." In re Milk Products,195 F.3d at 437-38 (internal quotation marks omitted) (quoting Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1419 (11th Cir. 1998)).   "A decision whether to allow a party to amend her complaint is left to the sound discretion of the district court and should be overruled only if there is an abuse of discretion."   Popoalii, 512 F.3d at 497 (citing Bell v. Allstate Life Ins. Co., 160 F.3d 452, 454 (8th Cir. 1998)).

> A court abuses its discretion when it denies a motion to amend a complaint unless there exists *undue delay*, bad faith, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment. . . . When late tendered amendments involve *new theories of recovery* and impose additional discovery requirements, appellate courts are less likely to hold a district court abused its discretion. . . . If a party files for leave to amend outside of the court's scheduling order, the party must show cause to modify the schedule.

Popoalii, 512 F.3d at 497 (emphasis added) (citing Fed. R. Civ. P. 16(b)).

Plaintiffs filed their complaint on August 29, 2011. (Docket 1). The court entered a scheduling order on October 31, 2011. (Docket 15). Plaintiffs were given until December 30, 2011, "to move to join additional parties and to amend the pleadings." Id. at 2. The court entered its summary judgment order on February 21, 2014. (Docket 65). The court twice continued the court trial. (Dockets 68 & 69). The court already determined "plaintiffs failed to plead a plausible claim for entitlement to damages due to the six denied billboard applications."[1] (Docket 114 at pp. 1-2). Nowhere in plaintiffs' oral or written arguments do they identify a reason, let alone demonstrate good cause, for their failure to include a theory of recovery based on the City's denial of Lamar's six billboard applications made two months prior to the vote on the Citizen Initiatives.

Plaintiffs assert "the City knew for over two years that Plaintiffs would be requesting damages for the six signs." (Docket 118 at p. 11). If true, plaintiffs, in addition to having until December 30, 2011, to move to amend their pleadings, would also have been aware of their theory of damages for over two years and yet did not seek to amend their complaint. Plaintiffs now seek to recover damages for the City's "de facto" application of the Citizen Initiatives vis-à-vis the six denied billboard applications which constitutes $260,833 of plaintiffs' overall

---

[1]The court can only find only one reference to Lamar's six denied billboard applications in plaintiffs' complaint. See Docket 1 at ¶ 18 (In the "Factual Background Section," plaintiffs allege "[i]n April 2011, Lamar attempted to use its off-premise sign credits to convert six (6) of its signs to digital signs but the City denied all six (6) applications.").

$770,758 damage request, a not insubstantial amount for a claim that was not pled.   (Dockets 118 at pp. 1, 30-35; 114).

The court will not ignore Fed. R. Civ. P. 16(b) and re-start the complaint and answer proceedings, re-open discovery, or require further briefing on these threshold issues at this late date.   The plaintiffs filed their complaint in 2011 and the issues, as contained in the 2011 complaint, were well-developed and refined.[2]   Plaintiffs' request to amend the complaint to include a claim for the City's *de facto* application of the Citizen Initiatives is denied.   In addition, plaintiffs' motion to amend their complaint is denied as moot because plaintiffs' regulatory takings claims are not ripe.

## 2.   Plaintiffs' Regulatory Takings Claims Are Not Ripe

### A.   Regulatory Takings Claims and <u>Lingle</u>

"The Takings Clause of the Fifth Amendment, made applicable to the States through the Fourteenth . . . provides that private property shall not 'be

---

[2]Plaintiffs and the City have been litigating various provisions of the City's sign code in state and federal court for years.   <u>See</u> <u>Lamar Adver. of S. Dakota, Inc. v. Zoning Bd. of Adjustment of City of Rapid City</u>, 822 N.W.2d 861, 862 (S.D. 2012) ("<u>Lamar 2012</u>") (reversing the circuit court's denial of a writ of certiorari); <u>Lamar Outdoor Adver. of S. Dakota, Inc. v. City of Rapid City</u>, 731 N.W.2d 199 (S.D. 2007) ("<u>Lamar 2007</u>").   The court is also reluctant to permit the addition of a previously unpled claim where the resolution of the claim involves issues which are the subject of litigation in state court.   <u>See</u> <u>Lamar 2012</u>, 822 N.W.2d at 862 n.1 (When reversing the circuit court's denial of a writ of certiorari the South Dakota Supreme Court noted "[i]n June 2011, two months after Lamar applied to convert the six signs to digital, Rapid City voters approved an initiated measure that banned the use of off-premises digital billboards.   Because Lamar's application preceded the June 2011 election, the newly-enacted ban did not apply to Lamar's request.").

taken for public use, without just compensation.'" Lingle v. Chevron U.S.A.
Inc., 544 U.S. 528, 536 (2005) (quoting U.S. Const. amend. V).[3]  "[T]he Takings
Clause 'does not prohibit the taking of private property, but instead places a
condition on the exercise of that power.'" Id. at 536 (quoting First English
Evangelical Lutheran Church of Glendale v. County of Los Angeles, 482 U.S.
304, 314 (1987).  "In other words, [the Takings Clause] 'is designed not to limit
the governmental interference with property rights *per se,* but rather to secure
*compensation* in the event of otherwise proper interference amounting to a
taking.'" Id. at 536-37 (emphasis in original) (quoting First English, 487 U.S. at
315).  The Court "emphasized [the] role [of the Takings Clause] in 'bar[ring]
Government from forcing some people alone to bear public burdens which, in all
fairness and justice, should be borne by the public as a whole.'" Id. at 537
(quoting Armstrong v. United States, 364 U.S. 40, 49 (1960) (further citations
omitted).

The Supreme Court identified two categories of regulatory action which
constitute *per se* takings under the Fifth Amendment.  "First, where government
requires an owner to suffer a permanent physical invasion of her property—
however minor—it must provide just compensation." Id. at 538 (citing Loretto v.
Teleprompter Manhattan CATV Corp., 458 U.S. 419 (1982)).  Second,
regulations that "completely deprive an owner of '*all* economically beneficial use'

---

[3]Lingle represents a significant line of demarcation in the Supreme Court's
takings jurisprudence.  The court's analysis focuses on the Supreme Court's
decision in Lingle and its progeny.

of her property. . . . [require] the government [to] pay just compensation for such 'total regulatory takings,' except to the extent that 'background principles of nuisance and property law' independently restrict the owner's intended use of the property."  Id. (original brackets omitted) (quoting Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1019, 1026-32 (1992)).

The Lingle Court explained that outside of these two categories of regulatory action, and the special context of land-use exactions, see Nollan v. California Coastal Comm'n, 483 U.S. 825 (1987); Dolan v. City of Tigard, 512 U.S. 374 (1994), "regulatory takings challenges are governed by the standards set forth in Penn Central Transp. Co. v. New York City, 438 U.S. 104 (1978)." Lingle, 544 U.S. at 538.   The Penn Central Court instructs lower courts to engage in "ad hoc, factual inquiries" when evaluating regulatory takings claims. Penn Central, 438 U.S. at 124; see also Lingle, 544 U.S. at 538; Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 535 U.S. 302, 326 (2002) ("In the decades following [Pennsylvania Coal Co. v. Mahon, 260 U.S. 393 (1922)], [the Court] ha[s] generally eschewed any set formula for determining how far is too far, choosing instead to engage in essentially ad hoc, factual inquiries.") (internal quotation marks and citations omitted).[4]

_____

[4]In Mahon, Justice Holmes opined "while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." Mahon, 260 U.S. at 415.   For this reason, Mahon is generally considered to be the birthplace of a regulatory takings claim.

The court's primary considerations in evaluating a regulatory takings

under <u>Penn Central</u> are:

> "[T]he *economic impact of the regulation* on the claimant and,
> particularly, *the extent to which the regulation has interfered with*
> *distinct investment-backed expectations.*" In addition, the "character
> of the governmental action"–for instance whether it amounts to a
> physical invasion or instead merely affects property interests
> through 'some public program adjusting the benefits and burdens of
> economic life to promote the common good'–may be relevant in
> discerning whether a taking has occurred.

<u>Lingle</u>, 544 U.S. at 538-39 (emphasis added) (quoting <u>Penn Central</u>, 438 U.S. at

124).   "[T]he <u>Penn Central</u> inquiry turns in large part, albeit not exclusively,

upon the magnitude of a regulation's economic impact and the degree to which it

interferes with legitimate property interests."   <u>Id.</u> at 540.

The <u>Lingle</u> Court expressly abrogated the "substantially advances" test

espoused in <u>Agins v. City of Tiburon</u>, 447 U.S. 255 (1980).   <u>Lingle</u>, 544 U.S. at

548.   The Court held "the 'substantially advances' formula is not a valid takings

test, and indeed conclude[d] that it has no proper place in our takings

jurisprudence."   <u>Id.</u>   The <u>Lingle</u> Court explained:

> Although a number of our takings precedents have recited the
> "substantially advances" formula minted in <u>Agins</u>, this is our first
> opportunity to consider its validity as a freestanding takings test.
> We conclude that this formula prescribes an inquiry in the nature of
> a due process, not a takings, test, and that it has no proper place in
> our takings jurisprudence.
>
> There is no question that the "substantially advances" formula was
> derived from due process, not takings, precedents.

<u>Id.</u> at 540.

**B.   Ripeness Standards**

"Although a regulatory taking may be challenged in federal court in an action under 42 U.S.C. § 1983, the claim must be ripe before the federal court may consider it.   The issue of ripeness, which has both Article III and prudential components, is one of subject matter jurisdiction."   Hawkeye Commodity Promotions, Inc. v. Miller, 432 F. Supp. 2d 822, 850 n.13 (N.D. Iowa 2006), aff'd sub nom. Hawkeye Commodity Promotions, Inc. v. Vilsack, 486 F.3d 430 (8th Cir. 2007) (quoting McKenzie v. City of White Hall, 112 F.3d 313, 316-17 (8th Cir. 1997)).   The Supreme Court articulated a two-prong test for determining the ripeness of a Takings Clause challenge.   First, "the government entity charged with implementing the regulations [must have] reached a final decision regarding the application of the regulations to the property at issue."   Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 186 (1985); see also Alto Eldorado P'ship v. Cnty. of Santa Fe, 634 F.3d 1170, 1174 (10th Cir. 2011) ("[T]here must be a final decision about how a regulation will be applied to the property in question, including whether the implementing administrative body will grant any waiver or variance.").   Second, "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation."   Williamson Cnty., 473 U.S. at 195; see also Hawkeye Commodity Promotions, 432 F. Supp. 2d at 850 n.13.

Plaintiffs unequivocally assert they have alleged facial challenges to the Citizen Initiatives.   (Docket 45 at p. 21) ("In this case, it is clear that Lamar and TLC assert facial challenges to the Citizen Initiatives.").   Plaintiffs have not pled a substantive due process claim.   See Docket 1.   Plaintiffs only assert regulatory takings claims and contend that a substantive due process analysis is inapplicable to their regulatory takings claims.   (Docket 118 at pp. 17-20).   The City agrees that if plaintiffs have a takings claim, it is a regulatory takings claim. (Docket 119 at p. 14).   Plaintiffs contend they are exempt from the ripeness requirements of Williamson County because they have alleged a facial Takings Clause challenge.   (Docket 45 at pp. 20-21).[5]

The Takings Clause does not, by itself, prohibit the government from interfering with a person's property rights, but rather merely "requires compensation 'in the event of otherwise proper interference amounting to a taking.'"   Lingle, 544 U.S. at 543 (quoting First English, 482 U.S. at 315).   The Lingle Court demonstrated "the 'substantially advances' inquiry probes the regulation's underlying validity," i.e., "whether a regulation of private property is *effective* in achieving some legitimate public purpose."   Lingle, 544 U.S. at 542, 543 (emphasis in original).   But, "[this] inquiry is logically *prior to and distinct from* the question whether a regulation effects a taking, for the Takings Clause

---

[5]This is plaintiffs' primary argument in support of their contention seeking a waiver of the ripeness test of Williamson County.   The court separately addresses plaintiffs' auxiliary arguments made through its cited cases.

*presupposes* that the government has acted in pursuit of a valid public purpose."
Id. at 543 (emphasis added).

The now-obsolete "substantially advances" takings theory permitted a
takings claim based on the fact the government's interference with the property
rights exceeded its permissible scope of authority and "di[d] not depend on
whether the landowner subject to the regulation ha[d] been compensated
[because] the regulatory action was invalid whether compensation is provided or
not." Alto Eldorado P'ship, 634 F.3d at 1176.   Therefore, "[b]ecause no amount
of compensation would alter the outcome of such a claim, a waiver of the
Williamson County requirement that the plaintiff first seek compensation before
mounting a no-longer-available 'substantially advances' Takings Clause
challenge [was] appropriate." Id.; see also Lingle, 544 U.S. at 543 ("[I]f a
government action is found to be impermissible—for instance because it fails to
meet the 'public use' requirement or is so arbitrary as to violate due
process—that is the end of the inquiry.   No amount of compensation can
authorize such action.").

The Lingle Court noted the three most common regulatory takings tests,
Loretto, Lucas and Penn Central, "share a common touchstone," that is they
"focus directly upon the severity of the burden that government imposes upon
private property rights." Lingle, 544 U.S. at 539.   "In stark contrast to the
three regulatory takings tests discussed above, the 'substantially advances'
inquiry reveals nothing about the *magnitude or character of the burden* a

particular regulation imposes upon private property rights or how any regulatory burden is *distributed* among property owners."   Id. at 529 (emphasis in original). "A test that tells us nothing about the actual burden imposed on property rights, or how that burden is allocated, cannot tell us when justice might require that the burden be spread among taxpayers through the payment of compensation." Id. at 543.

The Takings Clause does not prohibit the government from taking private property for a valid public purpose where the government provides adequate compensation.   The Lingle Court painstakingly rejected the rationale underlying the "substantially advances" takings analysis.   A regulatory takings claim based solely on the invalidity of the underlying regulation is no longer available.   With a "substantially advances" takings claim no longer available, the rationale in exempting a takings plaintiff from Williamson County's state litigation requirement, namely, that plaintiffs need not seek compensation in state court because the regulatory action was invalid and no amount of compensation would alter the outcome of plaintiff's claim, is no longer applicable.   Therefore, "a plaintiff mounting a challenge to a regulation alleging a taking without just compensation is required to meet the second Williamson County requirement before bringing suit either by demonstrating a procedure for seeking compensation is unavailable or by first seeking compensation."   Alto Eldorado P'ship, 634 F.3d at 1177.

14

Plaintiffs have not satisfied this requirement.   The court received no evidence that compensation to the plaintiffs was unavailable or otherwise foreclosed.   Indeed, Mr. Rumpca testified Lamar did not even apply for the permits necessary to convert the eleven signs to digital, let alone seek any type of administrative remedy.[6]

Plaintiffs did not pursue an available state court inverse condemnation action.   The South Dakota Constitution provides: "[p]rivate property shall not be taken for public use, *or damaged*, without just compensation, which will be determined according to legal procedure established by the Legislature and according to § 6 of this article . . . ."   S.D. Const. art. VI, § 13 (emphasis added). Notably, the South Dakota Constitution's inclusion of the words "or damaged" "provides an additional theory by which a plaintiff may bring a claim for damages against the state."   Krier v. Dell Rapids Twp., 709 N.W.2d 841, 847 (S.D. 2006); see also id. n.4 (noting that the "North Dakota Supreme Court recognizes that the words "or damaged" affords more protection than the federal constitution.").

Under South Dakota law, "[a] plaintiff can recover under the consequential damages rule if he or she can prove 'the consequential injury is peculiar to [their] land and not of a kind suffered by the public as a whole."   Id. at 847-48 (citing State Highway Comm'n v. Bloom, 93 N.W.2d 572, 577 (1958) (Implicit in the Krier Court's decision is the South Dakota Supreme Court's recognition that an

---

[6]Lamar disputes the need to seek administrative review and the efficacy of such review in light of their claims.   (Docket 45 at pp. 22-23).   However, the issue remains that Lamar took no action to obtain the permits for the eleven signs at issue in this case.

inverse condemnation action is a cognizable claim.) (further citations omitted).
"The injury to the plaintiff 'must be different in kind and not merely in degree
from that experienced by the general public.' " Id. at 848 (quoting Hurley v.
State, 143 N.W.2d 722, 726 (1966)).   In Hurley, the South Dakota Supreme
Court held an "aggrieved landowner [whose private property has been taken or
damaged by the state] has a common law action in circuit court where his
constitutional right to trial by jury may be asserted." Hurley, 143 N.W.2d at
729.

A state inverse condemnation action was available to plaintiffs in state
circuit court, and plaintiffs chose not pursue it.   Rather, Lamar chose to file its
claims in federal court.   Plaintiffs ask the court to evaluate the state
constitutionality of provisions of the City's municipal sign code.   Then, based on
the alleged invalidity of the municipal ordinance relative to the South Dakota
Constitution, determine that a regulatory taking occurred, despite plaintiffs
never having sought compensation elsewhere—or even applied for the necessary
permits.[7]   This is precisely the type of localized land-use issue that South
Dakota state courts are well-equipped to resolve.   Plaintiffs' failure to exhaust
their state remedies is a jurisdictional prerequisite which their regulatory takings
claim cannot overcome.   See Alto Eldorado P'ship, 634 F.3d at 1177 ("That such
challenges are accordingly difficult to bring merely reflects the basic framework

---

[7]Although plaintiffs claim otherwise, plaintiffs' regulatory takings claims
are premised on the "substantially advances" takings theory abrogated by Lingle.

16

of the Takings Clause under which claims are inextricably tied to the question of compensation.") (citing <u>Lingle</u>, 544 U.S. at 544).

### C.    Piecemeal Litigation

The court is wary of further prolonging piecemeal litigation of plaintiffs' claims against the City.    At trial and in post-trial briefing, it became clear that except for plaintiffs' broad assertions that Lamar and TLC have a general property interest in converting Lamar's vinyl signs to digital, <u>see</u> Docket 118 at pp. 21, 24, plaintiffs' primary argument is based on a South Dakota Supreme Court decision concerning six sign applications of Lamar's that the City denied prior to the enactment of the Citizen Initiatives.    <u>Lamar 2012</u>, 822 N.W.2d at 866.    The <u>Lamar 2012</u> Court held "[b]ecause the City acted in an irregular pursuit of its authority when it denied Lamar's six applications for sign building permits, the circuit court erred in denying a writ of certiorari."    <u>Lamar 2012</u>, 822 N.W.2d at 866.    Central to the Court's determination that the City acted in an irregular pursuit of its authority in requiring Lamar to obtain conditional use permits under sign code section 15.28.240(B) of the City's 2011 sign code was the fact that "[t]he City d[id] not dispute that Lamar's proposed alterations would bring its signs into compliance with the Sign Code."    <u>Id.</u> at 865.

Plaintiffs seek to use the <u>Lamar 2012</u> Court's certiorari decision and Mr. Rumpca's general assertion that Lamar would have built compliant digital signs as dispositive evidence that Lamar has a vested property interest in converting the eleven signs at issue in this case from vinyl to digital.    However, given that

17

Lamar did not file any applications for the eleven signs at issue here, the court cannot assume the City would also stipulate that Lamar's currently unknown alterations would have brought the signs into compliance with the City's sign code.[8]   The issue becomes even murkier when considering the proposed dates of Lamar's digital rollout and the 2012 amendments to the City's sign code.   See TEs 8, 90 (Lamar asserted it would introduce four new digital signs in 2012, three in 2013 and four in 2014).[9]   Although neither party submitted evidence regarding the specific date of the enactment of the 2012 amendments to the City's sign code, the seven signs alleged to be "rolled out" in 2013 and 2014 would have been subject to the regulatory regime of the amended sign code.[10]

---

[8]In addition to the underlying digital conversion, Mr. Gilley identified several ancillary concerns such as certain locations requiring new poles, vegetative easements and providing the digital signs with underground power. The court is hard pressed to ascertain how the City could stipulate to Lamar's compliance with the City's sign code without having been provided with the proposed alterations.

[9]The court references the trial exhibits as "TE."   The court includes specific page numbers or section pincites where necessary.

[10]Plaintiffs' expert, Mr. Wright, testified, and plaintiffs agreed, it would take approximately eight weeks to convert the vinyl signs to digital.   (Docket 118 at   p. 31).   Mr. Wright made no mention of Lamar requiring a 120-day good cause extension in converting its signs.   Therefore, even when the court presumes a May 1, 2013, rollout date for all three of Lamar's 2013 conversions, the latest possible date of the permit applications was January 1, 2013, after the enactment of the amended sign code.   See TEs 8 (Amended Rapid City sign code § 17.50.080(G)(2) provides "[a]ll sign building permits shall expire 120 days from the date the permit is issued.); 90.   The court need not analyze Lamar's alleged 2014 digital sign rollouts because the City's amended sign code was in effect throughout 2013 and 2014.

18

The amended sign code requires significantly more information before a sign can be structurally modified or altered than the 2011 sign code, see TE 8, §§ 17.50.080(A), 17.50.090(A), 17.50.090(F)(1) & (2).   The court simply cannot assume the City would again stipulate, based solely on Mr. Rumpca's assurances, that Lamar's unknown alterations would bring the eleven signs into compliance with the City's amended sign code.

### D.    Plaintiffs' Cited Authority

Plaintiffs' reliance on San Remo Hotel, L.P. v. City & Cnty. of San Francisco, Cal., is misplaced.   545 U.S. 323, 345, (2005).   Plaintiffs refer the court to footnote twenty-three of the Court's opinion which states:

> Petitioners' facial challenges to the HCO were ripe, of course under Yee v. Escondido, 503 U.S. 519, 534, (1992), in which we held that facial challenges based on the 'substantially advances' test need not be ripened in state court—*the claims do 'not depend on the extent to which petitioners are deprived of the economic use of their particular pieces of property or the extent to which these particular petitioners are compensated.*

San Remo Hotel, 545 U.S. 341 n.23 (internal quotation marks and citations omitted) (emphasis added); Cf. Lingle, 544 U.S. at 545-46 (abrogating the "substantially advances" test and explaining how its rationale is not applicable to a takings claim analysis).

Two footnotes later, the Court declared: "[i]n all events, petitioners may no longer advance such claims given our recent holding that the 'substantially advances formula is not a valid takings test, and indeed . . . has no proper place in our takings jurisprudence.' "   San Remo Hotel, 545 U.S. at 346 n.25 (quoting

Lingle, 544 U.S. at 548).   To the extent San Remo, "suggest[s] facial challenges are not subject to the same ripeness requirements, those facial challenges are no longer available under the Takings Clause [post-Lingle]."   Alto Eldorado P'ship, 634 F.3d at 1175.

In Yee v. City of Escondido, plaintiffs alleged the city's ordinance did not "substantially advance a legitimate state interest no matter how it is applied." Yee, 503 U.S. at 534 (1992) (internal quotation marks omitted).   The Court reasoned "[a]s this allegation does not depend on the extent to which petitioners are deprived of the economic use of their particular pieces of property or the extent to which these particular petitioners are compensated, petitioners' facial challenge is ripe."   Id. (citing among other cases Agins, 447 U.S. at 260).   To the extent Yee remains good law following the Lingle Court's prohibition of regulatory takings claims premised on the "substantially advances" theory, one court construed Yee as "only address[ing] the first prong of the Williamson County ripeness test, and is therefore silent on the question of whether a facial challenge may go forward despite having failed to satisfy the second prong."   Contest Promotions, LLC v. City & Cnty. of San Francisco, No. 15-CV-00093-SI, 2015 WL 1849525, at *8 (N.D. Cal. Apr. 22, 2015); see also Wilkins v. Daniels, 744 F.3d 409, 418 n.6 (6th Cir. 2014) (noting that much of the confusion surrounding the application of the second requirement of Williamson County stems from Yee's application of the "now defunct" "substantially advance[s]" takings theory).

The court's interpretation that facial regulatory takings claims must satisfy the second ripeness requirement of Williamson County finds company in the rulings made by other courts which have considered the issue post-Lingle. See, e.g., Alto Eldorado P'ship, 634 F.3d at 1177; Wilkins, 744 F.3d at 417 ("Appellants contend that Williamson County is inapplicable to facial challenges. Their argument oversimplifies Takings Clause jurisprudence.   With respect to just-compensation challenges, while Williamson County's first requirement may not apply to facial challenges, its second requirement—that plaintiffs must seek just compensation through state procedures—does."); Downing/Salt Pond Partners, L.P. v. Rhode Island & Providence Plantations, 643 F.3d 16 (1st Cir. 2011) (discussing the Williamson County ripeness prongs before concluding plaintiff was not excused from the state litigation prong of Williamson County); Lifestyle Properties, Inc. v. Cnty. of San Luis Obispo, 548 F.3d 1184 (9th Cir. 2008) (The Ninth Circuit noted the second requirement of Williamson County "must be satisfied in order to bring either an as-applied or a facial challenge," id. at 1190 n.13, though the court ultimately concluded plaintiff was exempt from the requirement because no state remedy was available at the time.); Holliday Amusement Co. of Charleston v. S. Carolina, 493 F.3d 404, 407 (4th Cir. 2007) (The Fourth Circuit ultimately concluded "[p]laintiff has not satisfied this requirement because, as he admits, he has not sought just compensation through a state court procedure. . . . given that South Carolina opens its courts

21

to inverse condemnation claims arising from regulatory takings . . . the plaintiff was obligated under <u>Williamson</u> to avail himself of those procedures.").

In the case of <u>CBS Outdoor Inc. v. New Jersey Transit Corp.</u>, plaintiffs alleged various federal and state constitutional provisions when asserting "the termination of their leases for billboards on NJ Transit property and the implementation of the alleged Monetization Program.   [Plaintiffs] essentially attack[ed] what they perceive[d] as a plan to deprive them of the entire value of their asserted property interests with regard to their billboards on NJ Transit property."   No. CIV.A.06-2428HAA, 2007 WL 2509633, at *9 (D.N.J. Aug. 30, 2007), <u>aff'd sub nom.</u> <u>Carole Media LLC v. New Jersey Transit Corp.</u>, 550 F.3d 302 (3d Cir. 2008).   "The [c]ourt conclude[d] that the <u>Williamson</u> exhaustion requirement applie[d], and Plaintiffs' takings claims [were] not ripe.   <u>Id.</u> at *17.

The <u>CBS Outdoor</u> court further noted "[p]laintiffs cannot avoid <u>Williamson</u>'s exhaustion of state procedures requirement by declining to categorize their claims as ones for just compensation.   The Takings Clause primarily concerns itself with ensuring just compensation and is not violated until just compensation is denied."   <u>Id.</u> at *12; <u>Cf.</u> Docket 45 at p. 21 (Plaintiffs asserted "[i]t is . . . important to note that Lamar and TLC do not seek damages for their state and federal equal protection claims and, instead only assert rights to declaratory and injunctive relief . . . .").   Plaintiffs' assertions in this regard do not exempt their takings claims from the state litigation requirement of <u>Williamson County</u>.

Plaintiffs argue because they have asserted an equal protection claim based on the City's "spiteful efforts to get [them] for reasons wholly unrelated to any legitimate state objective, then state remedies need not be pursued under Williamson." (Docket 45 at p. 21) (internal quotation marks and brackets omitted) (citing Esmail v. Macrane, 53 F.3d 176, 180 (7th Cir. 1995).   In addition to Esmail representing only persuasive authority to this court, Esmail simply held that plaintiff stated a cognizable Equal Protection Clause claim when alleging unequal treatment by the mayor in denying the renewal of plaintiff's liquor license.   See Esmail, 53 F.3d at 180.   The court fails to see how Esmail could be read as an exception to the state litigation requirement imposed on regulatory takings under Williamson County.   In any event, the court granted the City's motion for summary judgment on plaintiffs' equal protection claim, and the issue is moot.   (Docket 65 at p. 31).

Plaintiffs contend "courts have also determined that if a plaintiff asserts that a taking is not for a public purpose, then state remedies need not be pursued under Williamson."   (Docket 45 at p. 22) (citing Dahlen v. Shelter House, 598 F.3d 1007, 1012 (8th Cir. 2010)).   In addition to plaintiffs' argument leading the court to conclude plaintiffs' regulatory takings claims are actually premised on the now-unavailable "substantially advances" theory, the reference is imprecise.   In Dahlen, the United States Court of Appeals for the Eighth Circuit characterized plaintiffs' contention as a "protean argument [that] . . . appears to take the form of nascent public policy and *due process claims*. . . .

23

Both arguments ignore the [plaintiffs'] ability to obtain an injunction against an illegal taking in state court." <u>Dahlen</u>, 598 F.3d at 1012 n.7 (emphasis added). The Eighth Circuit, after determining the Fifth Amendment's public purpose requirement was satisfied, held the plaintiffs were "required to seek compensation through state inverse condemnation procedures before their claim can be ripe.   Without a ripe claim to adjudicate, the district court properly dismissed this case for lack of jurisdiction." <u>Id.</u> at 1013.

Because the plaintiffs in <u>Dahlen</u> put forth a due process claim, the court properly analyzed that issue first.   <u>See</u> <u>Lingle</u>, 544 U.S. at 543 (The "substantially advances" inquiry "is logically prior to and distinct from the question whether a regulation effects a taking, for the Takings Clause presupposes that the government has acted in pursuit of a valid public purpose.").   Plaintiffs here did not plead a due process claim, only regulatory takings claims.   Therefore, plaintiffs were required to seek compensation through South Dakota's inverse condemnation procedure under <u>Williamson County</u>.   Plaintiffs did not pursue such an action and their regulatory takings claims are not ripe.[11]

---

[11]As a final of point of reference, the court notes the dissimilarity of the posture of plaintiffs' regulatory takings claims and that of the plaintiff in <u>Iowa Assur. Corp. v. City of Indianola, Iowa</u>, 650 F.3d 1094 (8th Cir. 2011).   In <u>Iowa Assurance</u>, the plaintiff first sued the City of Indianola in state court, alleging the city's ordinance violated the Takings Clause of the Fifth Amendment as incorporated through the Fourteenth Amendment.   <u>Id.</u> at 1096.   The city subsequently removed the case to federal court.   <u>Id.</u>   Here, plaintiffs filed their complaint in federal court in the first instance.

24

As the Eighth Circuit noted "a significant number of plaintiffs will necessarily litigate their federal takings claims in state court but such is a consequence of Congress's express concern for the weighty interests in finality and comity."   <u>Knutson v. City of Fargo</u>, 600 F.3d 992, 998 (8th Cir. 2010) (internal quotation marks and citations omitted).   And, as the Supreme Court observed:

> [T]here is scant precedent for the litigation in federal district court of claims that a state agency has taken property in violation of the Fifth Amendment's Takings Clause.   To the contrary, most of the cases in our takings jurisprudence, including nearly all of the cases on which petitioners rely, came to us on writs of certiorari from state courts of last resort.

<u>San Remo Hotel</u>, 545 U.S. at 347.

Plaintiffs were required to seek compensation in state court before bringing suit in federal court.   Plaintiffs did not.   Plaintiffs' regulatory takings claims are not ripe.   The court must dismiss plaintiffs' regulatory takings claims for lack of subject matter jurisdiction.   <u>See</u> <u>Dahlen</u>, 598 F.3d at 1012; <u>Hawkeye Commodity Promotions</u>, 432 F. Supp. 2d at 850 n.13 ("The issue of ripeness . . . is one of subject matter jurisdiction.") (citations omitted).

The court expresses no opinion on the merits of plaintiffs' regulatory takings claims.   To the extent the court's summary judgment order evaluated the merits of the City's off-premises digital sign ban (Docket 65 at pp. 14-20), and the merits of the City's twenty-year sunset provision on sign credits, <u>id.</u> at 22-24, those portions of the order are vacated.

25

### 3.     Supplemental Jurisdiction

The court's jurisdiction over plaintiffs' constitutional and § 1983 claims is based on 28 U.S.C. § 1331.   See Pawlowski v. Scherbenske, 891 F. Supp. 2d 1077, 1088 (D.S.D. 2012).   The court's jurisdiction over plaintiffs' remaining state law claims rests in 28 U.S.C. § 1367.   "Under the supplemental jurisdiction statute, a court may dismiss state law claims if it has dismissed all claims over which it had original federal question jurisdiction."   Id. (citing 28 U.S.C. § 1367(c)(3)); see also Ivy v. Kimbrough, 115 F.3d 550, 552-53 (8th Cir. 1997) ("In most cases, when federal and state claims are joined and the federal claims are dismissed on a motion for summary judgment, the pendent state claims are dismissed without prejudice to avoid '[n]eedless decisions of state law . . . as a matter of comity and to promote justice between the parties.' ").   The court, having now dismissed or granted summary judgment against plaintiffs on all of their federal claims,[12] finds it is no longer vested with supplemental jurisdiction over plaintiffs' state law claims.   Therefore, the court dismisses plaintiffs' remaining state law claims without prejudice.

---

[12]Because the court dismissed plaintiffs' regulatory takings claims, plaintiffs' claim under 23 U.S.C. § 131 must also be dismissed without prejudice. See Nat'l Adver. Co. v. City of Ashland, Or., 678 F.2d 106, 109 (9th Cir. 1982) ("Since the Highway Beautification Act creates no federal rights in favor of billboard owners, it creates no private cause of action for their benefit. . . . [T]he Highway Beautification Act cannot be the source of a remedy . . . under federal law . . . .").

26

**ORDER**

Based on the above analysis, it is

ORDERED that plaintiffs' motion to amend the complaint is denied on the merits and as moot.

IT IS FURTHER ORDERED that the City's motion to reconsider the declaratory ruling on digital signs is granted in part and denied in part.   The motion is granted to the extent plaintiffs' regulatory takings claims are not ripe for review, and the court does not consider the merits of plaintiffs' claims.   To the extent the court previously considered the merits of the City's off-premises digital sign ban and the City's twenty-year sign credit sunset provisions, those portions of the court's summary judgment order are vacated.   The motion is denied as moot to the extent it requests the court to reconsider the merits of plaintiffs' regulatory takings claims.

IT IS FURTHER ORDERED that plaintiffs' regulatory takings claim relating to the City's off-premises digital sign ban, specifically, sections 15.28.050(R) and 15.28.160(P) of the Rapid City sign code; plaintiffs' regulatory takings claim relating to the City's spacing requirements for off-premises signs, specifically section 15.28.160(D) of the Rapid City sign code; plaintiffs' regulatory takings claim relating to the City's twenty-year sunset provision of sign credits, specifically section 15.28.250(F) of the Rapid City sign code; plaintiffs' claim under 23 U.S.C. § 131; and plaintiffs' state law claims are dismissed without prejudice.

IT IS FURTHER ORDERED that the City's renewed motion for summary judgment is denied as moot.

IT IS FURTHER ORDERED that the City's motion for a directed verdict is denied as moot.

IT IS FURTHER ORDERED that plaintiffs' request for attorney's fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988 is denied as plaintiffs were not the prevailing party on any federal claim.

Dated September 29, 2015.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
CHIEF JUDGE